IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 1:15-cv-1200 |
| v. | ) ) | |
| JUDITH ANN GORMAN-HUBKA, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this interpleader action, claimants dispute who is entitled to receive the benefits of decedent's life insurance policy. Plaintiff, the stakeholder, filed an interpleader complaint for the purpose of determining the rightful beneficiary. Thereafter, claimants filed answers and cross-claims against each other. Claimant Judith Gorman-Hubka also filed a counterclaim against plaintiff, alleging two claims. Claimants then filed cross-motions for summary judgment with respect to their cross-claims. As the motions have been fully briefed and argued, they are now ripe for disposition.

I.[1]

- Stakeholder-plaintiff Metropolitan Life Insurance Company is a New York corporation.

- Defendant-claimant Judith Gorman-Hubka ("Claimant Gorman-Hubka") is the ex-wife of Eugene James Hubka, Jr. ("Decedent"), and is a citizen of Virginia.

---

[1] The facts dispositive of claimants' cross-motions for summary judgment are derived from the respective claimants' lists of undisputed facts and the summary judgment record as a whole, including the group universal life insurance policy, the transcript of a recorded telephone conversation, and various documents. To the extent that claimants dispute facts, those disputes are not material to the dispositions of the motions.

1

- Defendant-claimants Terri Price, Sherri Berkman, and Heather Sage are Decedent's sisters ("Sister Claimants") and are citizens of Virginia.

- Decedent was an employee of Exxon Mobil Corporation and was insured under a group universal life insurance policy issued by plaintiff to Exxon ("Policy").

- Under the Policy, an insured has the right to name a beneficiary to receive the benefits under the policy upon the insured's death ("Life Insurance Benefits").

- The Policy provides: (i) that "[t]he 'Beneficiary' is the person or persons you choose to receive any benefit payable because of your death"; (ii) that "[y]ou make the choice in Writing on a form approved by us" that "must be filed with the records for This Plan"; and (iii) that "[y]ou may change the Beneficiary at any time by filing a new form with us." Policy, at 13.

- The Policy further provides that "[i]f there is no Beneficiary at your death the Death Benefit will be divided and paid in equal shares to each member of the first class in the order listed ... in which there is a person who is related to you and who survive[s] you": (i) "[s]pouse"; (ii) "child"; (iii) "parent"; (d) "brother or sister." Policy, at 13.

- On September 1, 2004, Decedent designated his then-wife, Claimant Gorman-Hubka, as the sole primary beneficiary under the Policy.

- On September 13, 2012, Decedent and Claimant Gorman-Hubka entered a Property Settlement and Separation Agreement ("Settlement Agreement"), and on May 30, 2014, Decedent and Claimant Gorman-Hubka divorced.

- Thereafter, on July 22, 2014, Decedent called plaintiff's employee, Operator Ben, regarding the Policy. During the telephone call, Decedent informed Operator Ben that he was recently divorced, but stated that he wished to keep his ex-wife, Claimant Gorman-Hubka, as the beneficiary of the Policy. Decedent asked Operator Ben what steps were necessary to keep Claimant Gorman-Hubka as the beneficiary of the Life Insurance Benefits. *See* Stip. Transcript of Telephone Call (July 22, 2014).[2]

- During the same telephone call, Operator Ben advised Decedent that he could keep Claimant Gorman-Hubka as the beneficiary. *See id.*

---

[2] The telephone call was recorded, and the parties have agreed to a stipulated transcript of the conversation that took place during the telephone call. The exact identity of plaintiff's employee, Operator Ben, is unknown. The Sister Claimants refer to the individual as a "telephone operator," and Claimant Gorman-Hubka refers to him as "MetLife." The stipulated transcript refers to him as "Operator Ben." *See* Stip. Transcript of Telephone Call (July 22, 2014).

- Decedent then asked, "[s]o I don't need to do any paperwork or anything like that to keep her the same?" Operator Ben replied, "Right. If she is already the beneficiary, then there is nothing you need to do." *Id.*

- Thereafter, on August 3, 2014, Decedent died. At the time of his death, Decedent was covered by the Policy in the amount of $281,920.11.

- The only beneficiary designation on file for Decedent is the September 1, 2004 designation, which named Claimant Gorman-Hubka as the sole primary beneficiary of the Life Insurance Benefits.

- On or about August 20, 2014, plaintiff received a Claimant's Statement from Sage, one of the Sister Claimants, for the Life Insurance Benefits.

- On or about December 30, 2014, plaintiff received a Claimant's Affidavit from Sage requesting that the Life Insurance Benefits be paid to the Sister Claimants. Sage also sent a Disclaimer, dated December 5, 2014, from Decedent's father, which stated that he revoked any interest in the Life Insurance Benefits.

- On September 18, 2015, plaintiff filed this interpleader action to determine the beneficiary entitled to receive Decedent's benefits under the Policy.

- On November 18, 2015, plaintiff deposited with the Clerk of the Court Decedent's Life Insurance Benefits in the amount of $281,920.11.

- Claimants filed cross-claims against each other, and Claimant Gorman-Hubka filed counterclaims against plaintiff.

- Thereafter, claimants filed cross-motions for summary judgment with respect to their cross-claims.

## II.

At the threshold, there is a question as to whether Virginia law[3] is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[4] This

---

[3] IF ERISA does not apply, then state law applies because this is a diversity action, and Virginia law applies because the Policy was issued in Virginia to a Virginia resident. *Maryland Casualty Co. v. Burley*, 345 F.2d 138, 139 (4th Cir. 1965).

[4] Although claimants did not raise this issue in their original memoranda in support of their summary judgment motions, claimants and plaintiff were directed to file supplemental

3

question is outcome determinative. Under Virginia law, "upon the entry of a decree of annulment or divorce from the bond of matrimony ... , any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked." Va. Code § 20.111.1. Importantly, however, if ERISA applies, then Va. Code § 20.111.1 is preempted pursuant to the Supreme Court's decision in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (holding that ERISA preempted a similar Washington state law). Thus, if ERISA applies by preemption, Claimant Gorman-Hubka prevails, as Decedent's pre-divorce designation of Gorman-Hubka as the Policy beneficiary was not automatically revoked by § 20,111.1. If ERISA does not apply, however, Decedent's pre-divorce designation of Claimant Gorman-Hubka as the Policy beneficiary was automatically revoked by virtue of Va. Code § 20.111.1, and further analysis proceeds under Virginia law.

ERISA applies generally to "employee welfare benefit plan[s]" that are "established or ... maintained by an employer ... for the purpose of providing [benefits] for its participants or their beneficiaries," including life insurance benefits. 29 U.S.C. § 1002(1). Importantly, however, the Department of Labor ("DOL") has issued a regulation that creates an exception for some group insurance plans. Specifically, the DOL regulation states that, under ERISA, the term "[e]mployee welfare benefit plan" does not include "a group or group-type insurance program offered by an insurer to employees or members of an employee organization under which":

(1) "[n]o contributions are made by an employer or employee organization";

(2) "[p]articipation [in] the program is completely voluntary for employees or members";

---

memoranda on the issue given its potentially dispositive effect. *Metropolitan Life Insurance Co. v. Gorman-Hubka, et. al*, No. 1:15-cv-1200 (January 15, 2016) (Order). The parties' supplemental memoranda reflect that they are in agreement that ERISA does not preempt Virginia law here.

4

(3) "[t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer"; and

(4) "[t]he employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

29 C.F.R. § 2510.3-1(j).

The DOL issued this regulation pursuant to 29 U.S.C. § 1135, which provides that the "Secretary may prescribe such regulations as he finds necessary or appropriate to carry out [ERISA]." As the Supreme Court has made clear, DOL regulations prescribed pursuant to § 1135 that "address[] the threshold issue of whether an ERISA plan exists" are entitled to *Chevron* deference when determining whether a particular plan or policy constitutes an "employee welfare benefit plan" under § 1002(1). *Yates v. Hendon*, 541 U.S. 1, 20 (2004).[5]

Here, the Policy at issue satisfies all four criteria set forth in 29 C.F.R. § 2510.3-1(j). Indeed, under the terms of the Policy's Trust Agreement, participating employers agreed to four conditions that parrots the language of the four criteria set forth in 29 C.F.R. § 2510.3-1(j). *See* Pl. Ex. A, MetLife Group Insurance Trust Agreement. As such, the Policy is not governed by ERISA, and therefore Virginia law controls.

### III.

Because claimants agree that Virginia law controls, they also agree that upon Decedent's divorce, Va. Code § 20.111.1 automatically operated to revoke Decedent's existing designation of Claimant Gorman-Hubka as the Policy beneficiary. Yet, this does not end the analysis, as the

---

[5] *See also Dontas v. Metropolitan Life Ins. Co.*, No. 91-503, 1993 WL 99189, at *8-9 (E.D. La. Mar. 31, 1993) (holding that a life insurance policy did not qualify as an ERISA plan because it met the four criteria set forth in 29 C.F.R. § 2510.3-1(j)).

parties disagree as to whether Decedent made a post-divorce Policy designation. Specifically, Claimant Gorman-Hubka contends that Decedent's July 22, 2014 telephone call constitutes a valid, post-divorce designation of Claimant Gorman-Hubka as the beneficiary. The Sister Claimants contend that there was no valid post-divorce designation, and hence they are the Policy beneficiaries pursuant to the provision of the Policy that sets forth beneficiaries in the event that one is not designated.

Analysis of this dispute properly begins with the Policy provisions that specify the steps that must be followed to change a Policy beneficiary. In this regard, the Policy provides: (i) that the insured must choose the beneficiary "in Writing on a form approved by [plaintiff]" that "must be filed with the records with this Plan;" and (ii) that the insured "may change the [b]eneficiary at any time by filing a new form with [plaintiff]." Policy, at 13. Clearly, there was no literal compliance with the Policy's change-of-beneficiary requirements, as Decedent did not submit a form designating a beneficiary. But this, too, does not end the analysis because even though Decedent did not literally comply with the Policy's change-of-beneficiary requirements, the question remains whether the telephone call constitutes Decedent's substantial compliance with the Policy's change-of-beneficiary requirements.

Substantial compliance is an equitable principle that gives effect to the demonstrated intent of an insured in designating a beneficiary. Although there is little Virginia case law on the subject, it is clear that under Virginia law, "a policy owner's attempt to change the beneficiary should be allowed when the owner does everything within his power to effectuate the change." *Dennis v. Aetna Life Ins. and Annuity Co.*, 873 F. Supp. 1000, 1006 (E.D. Va. 1995) (Smith, J.).[6]

---

[6] In support of this proposition, the district court in *Dennis* cited a Virginia trial court case and a federal district court case. *See United Servs. Life Ins. Co. v. Moss*, 303 F. Supp. 72, 75-76

Under Virginia law, the substantial compliance doctrine requires evidence that (i) "the insured had determined to change the beneficiary" and (ii) "that he had done everything to the best of his ability to effect the change" by taking all the steps "he could to comply with the provisions of the policy." *United Servs. Life Ins. Co. v. Moss*, 303 F. Supp. 72, 75-76 (W.D. Va. 1969). Importantly, "courts will not" use the substantial compliance doctrine to "complete for an individual that which he reasonably could have accomplished." *Id.* at 76. Indeed, where courts have found substantial compliance, it is generally only "where the failure to deliver the [relevant document] to the insurer is due to the fact that it is lost, destroyed or otherwise inaccessible to the insured," or "where the forms and policy are sent in but not endorsed before the insured dies." *Id.* But the cases reflect that substantial compliance is not found to exist "where the failure to deliver the policy is due to the insured's negligence or remains unexplained." *Id.*

The test for substantial compliance under Virginia law is essentially the same as the federal common law test for substantial compliance. Indeed, the Fourth Circuit has made clear that "an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy" under federal law when the insured: (i) "evidences his or her intent to make the change"; and (ii) "attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required for the change of beneficiary provisions of the policy." *Phoenix Mut. Life. Ins. Co. v. Adams*, 30 F.3d 554, 565 (4th Cir. 1994). Although the Supreme Court of Virginia has not explicitly held that the test for substantial compliance under Virginia law is equivalent to the federal common law test for substantial compliance, the existing lower court Virginia case law suggests that that the two tests are

---

(applying the substantial compliance doctrine as a matter of Virginia law); *Jackson v. Shenandoah Life Ins. Co.*, 4 Va. Cir. 499 (Cty. Of Alexandria 1979) (same).

essentially equivalent.[7] Indeed, no court has noted any difference between the two tests. Because the two tests are essentially equivalent, and because there is little case law on the doctrine of substantial compliance under Virginia law,[8] it is appropriate here to look to cases applying the federal substantial compliance doctrine for guidance. Indeed, the primary case on which Claimant Gorman-Hubka relies in support of the argument that Decedent substantially complied with the Policy's change-of beneficiary requirements is a Fourth Circuit case involving an ERISA plan and the application of the substantial compliance doctrine under federal common law. *See Phoenix Mutual*, 30 F.3d at 565.

Here, Claimant Gorman-Hubka contends that Decedent substantially complied with the Policy. Although Decedent did not complete a written, post-divorce form to designate Claimant Gorman-Hubka as his beneficiary, Decedent did contact the insurer directly to attempt to ensure, post-divorce, that Claimant Gorman-Hubka remained the designated Policy beneficiary. In so doing, Decedent clearly demonstrated his intent to designate Claimant Gorman-Hubka as the Policy beneficiary during the telephone call. At issue here is whether Decedent did "everything to the best of his ability to effect the change" by taking all the steps "he could to comply with the provisions of the policy." *Moss*, 303 F. Supp. at 75-76. During the telephone call, Decedent: (i)

---

[7] When applying the substantial compliance doctrine, Virginia courts cite cases involving federal common law. *See, e.g., Lockner v. Home Beneficial Life Ins. Co.*, No. G7054-2, 1982 WL 215200, at *2 (Va Cir. Ct. Cty. of Richmond May 4, 1982) (citing cases involving federal common law in support of the proposition that substantial compliance with the applicable terms of the policy is sufficient); *Jackson v. Shenandoah Life Ins. Co.*, 4 Va. Cir. 499 (Cty. of Alexandria 1979) (adopting the "liberal enlightened" position of "[a] majority of the courts" that "a change of a beneficiary can be effected without strict or complete compliance with the provisions of the policy regarding notice and endorsement").

[8] It seems likely that the dearth of recent precedents addressing the substantial compliance doctrine under Virginia law is due, at least in part, to ERISA, which often preempts Virginia law in cases in which the substantial compliance doctrine would arise. Indeed, the most recent federal court articulation of the test for substantial compliance under Virginia law is from a case that was decided in 1969, five years before ERISA was enacted. *See Moss*, 303 F. Supp. at 75-76.

informed Operator Ben of his recent divorce; (ii) asked what steps he needed to take to ensure that his ex-wife would remain as the beneficiary; and (iii) obtained Operator Ben's confirmation that "[i]f she is already the beneficiary, then there is nothing you need to do." Stip. Transcript of Telephone Call (July 22, 2014). This advice was misleading, to be sure. But this, too, does not end the analysis; it remains to be determined whether Decedent took any steps to complete a post-divorce change-of-beneficiary form as required by the Policy.

Claimant Gorman-Hubka contends that Decedent failed to take additional steps only because Operator Ben expressly told him that additional steps were not required. But as the Sister Claimants correctly point out, Operator Ben did not instruct Decedent in absolute terms that no additional steps were required; rather, Operator Ben stated that "[i]f she is *already the beneficiary*, then there is nothing you need to do." *Id.* (emphasis added). As Claimant Gorman-Hubka concedes, as she must, at the time of the telephone call, Claimant Gorman-Hubka was not the designated beneficiary by virtue of the operation of Va. Code § 20.111.1. Moreover, during the telephone call, Decedent did not mention the date of the divorce, the date of the original designation in relation to the divorce, where the divorce took place, or any other relevant information that would have put Operator Ben on notice that Va. Code § 20.111.1 had automatically revoked Claimant Gorman-Hubka's status as the designated beneficiary. In sum, therefore, these undisputed facts make clear that although Decedent intended to change beneficiary, he did not do "everything to the best of his ability to effect the change" by taking all the steps "he could to comply with the provisions of the policy." *Moss*, 303 F. Supp. at 75, 76.

Seeking to avoid this result, claimant Gorman-Hubka relies heavily on the Fourth Circuit's decision in *Phoenix Mutual*, 30 F.3d at 565-68 (applying federal common law). Yet, contrary to Claimant Gorman-Hubka's contention, *Phoenix Mutual* does not support the

conclusion that Decedent substantially complied with the Policy. There, an insured designated his son as the beneficiary of two life insurance policies. *Id.* at 556. Following the insured's subsequent marriage, the insured sought to add his step-daughter to his medical insurance and to change the beneficiary of one of his life insurance policies to his name his new wife as the beneficiary. *Id.* at 557. The insurance company provided the insured with a dual form on which he could accomplish both goals. *Id.* The insured signed and submitted the form, but failed to fill in the line next to "change in beneficiary" on the form. *Id.* Two weeks after submitting the incomplete form, the insured called the agent responsible for changing the beneficiary to ensure that the insurance company would designate his wife as the beneficiary. *Id.* In the course of the telephone conversation, the agent confirmed the designation, but the agent neglected to make the necessary change to accomplish the new beneficiary designation. Thereafter, the insured died, and both his son and his wife made claims to the life insurance proceeds under the policy. *Id.* On these facts, the Fourth Circuit held that the insured had "substantially complied" with the policy's requirements because, although the insured had not completed the "change in beneficiary" line on the form, he had demonstrated his intent to change the beneficiary by verbally requesting the dual purpose form, completing all but one line of the form, and calling the agent to confirm that the beneficiary had been changed. *Id.* at 567. Indeed, the beneficiary had not been formally changed only because the insurance company's agent neglected to accomplish the change in beneficiary; the decedent had done all he could have done to comply with the policy's change-of-beneficiary requirements. *Id.* Here, by contrast, Decedent did not do all he could have done to comply with the Policy's change-in-beneficiary requirements. Decedent made no efforts to comply with the Policy's change-in-beneficiary form requirement; he merely made a single telephone for the purpose of finding out if his ex-wife could remain as

the designated beneficiary. Thus, Decedent did not literally or substantially comply with change-in-beneficiary requirements set forth in the Policy.

The conclusion reached here comports with the results reached by courts in other jurisdictions when faced with similar circumstances. For example, in *Prudential Insurance Company of America v. Schmid*, 337 F. Supp.2d 325, 327 (D. Mass. 2004), a decedent, who had previously named his daughter as the beneficiary of his basic life insurance policy, later named his second wife as the beneficiary of an additional life insurance policy. Thereafter, the decedent requested information from the insurer regarding the named beneficiary for his basic life insurance and a change of beneficiary form. *Id.* During a telephone call with the insurer's agent, the decedent informed the agent that he intended to designate his wife as the beneficiary for the basic life insurance policy, and the insurer's agent incorrectly told the decedent that his wife was already the designated beneficiary for that policy. *Id.* As result, the decedent did not complete the necessary change-of-beneficiary form. *Id.* On these facts, the district court in *Prudential Insurance*, relying on the Fourth Circuit's decision in *Phoenix Mutual*, concluded that as a matter of federal common law, the decedent had not substantially complied with the policy because the "telephone conversation [did] not suffice as positive act to accomplish [decedent's] intent." *Id.* at 331. In this regard, the district court determined in *Prudential Insurance* that the decedent's failure to "take the necessary steps to change his beneficiary," namely filling out the necessary change-of-beneficiary form, did not meet the standard for substantial compliance, even when his failure to do so was premised on the insurance company giving him the wrong information. *Id.*

Similarly, in *Sever v. Massachusetts Mutual Life Insurance Company*, 944 S.W.2d 486, 489 (Tex. App. 1997), a Texas court concluded that a decedent did not substantially comply with a policy's requirements in circumstances similar to the facts here. Specifically, the decedent in

11

that case designated his spouse as a beneficiary on an insurance policy, and upon the couple's divorce, a Texas statute automatically operated to revoke the decedent's beneficiary designation. *Id.* at 488-89. After the divorce, the decedent informed the insurance company that he wished to keep his ex-wife as the designated beneficiary, but he did not fill out a change-of-beneficiary form. *Id.* at 289. On the basis of these facts—facts essentially identical to those at bar—the Texas court concluded that as a matter of Texas law, the decedent did not substantially comply with the terms of the policy. *Id.* at 490-91.

In her opposition to the result reached here, Claimant Gorman-Hubka cites a number of additional cases, which, when carefully read, are distinguishable from the present case because the results in those cases were based not on the substantial compliance doctrine, but rather on statutory interpretation grounds. *See State Farm Life Ins. Co. v. Davis*, No. 3:07-cv-00164, 2008 WL 2326323, at *4-6 (D. Alaska June 3, 2008) (holding that an Alaska statute did not *absolutely* revoke a husband's designation of his wife as a beneficiary upon the couple's divorce, where the husband had demonstrated his post-divorce desire for his ex-wife to remain the beneficiary and the insurer's employee mistakenly believed that nothing needed to be done to ensure that the ex-wife was the designated beneficiary); *Motorist Life Ins. Co. v. Sherbourne*, 22 N.E.3d 1133, 1139 (Ohio Ct. App. 2014) (holding that a husband's post-divorce oral designation of his wife as a beneficiary was valid because an Ohio statute requiring "a designation of a beneficiary" did not require a written designation); *Allstate Life Ins. Co. v. Hanson*, 200 F. Supp. 2d 1012, 1020 (E.D. Wis. 2002) (holding that a Wisconsin statute, which automatically revoked spousal designations upon divorce, did not apply where there was evidence that the spouse did not intend for the divorce to revoke the designation).

In summary, contrary to Claimant Gorman-Hubka's contention, Decedent did not substantially comply with the Policy's change-of-beneficiary form requirement because Decedent did not do "everything to the best of his ability to effect the change," as he did not take all the steps "he could to comply with the provisions of the policy." *Moss*, 303 F. Supp. at 75, 76.

## IV.

For the reasons stated here, the Sister Claimants motion for summary judgment with respect to their cross-claims against Claimant Gorman-Hubka must be granted, and Claimant Gorman-Hubka's motion for summary judgment with respect to her cross-claim against the Sister Claimants must be denied. Yet to be resolved in this case is Claimant Gorman-Hubka's counterclaim against plaintiff.

An appropriate Order will issue.

February 3, 2016
Alexandria, VA

/s/
_____
T. S. Ellis, III
United States District Judge